# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

FANCY M. V.,[1]                                    6:20-cv-00252-BR

       Plaintiff,                              OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

KATHERINE L. EITENMILLER
MARK A. MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette St.
Eugene, OR  97401
(541) 686-1969

      Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

---

    [1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.  Where applicable, this Court uses the same designation for the nongovernmental party's immediate family member.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**MARTHA A. BODEN**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-3710

       Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Fancy M. V. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.


## ADMINISTRATIVE HISTORY

     On August 2, 2018, Plaintiff protectively filed her

2 - OPINION AND ORDER

application for SSI benefits.  Tr. 13, 233, 235.[2]  Plaintiff alleges a disability onset date of April 24, 2012.  Tr. 13, 235.  Plaintiff's application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on September 17, 2019.  Tr. 13, 29-53.  Plaintiff and a vocational expert (VE) testified at the hearing.  Plaintiff was represented by an attorney at the hearing.

On October 17, 2019, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 13-23.  Plaintiff requested review by the Appeals Council.  On January 2, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner.  Tr. 1-3.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On February 14, 2020, Plaintiff filed a Complaint in this Court seeking review of the Commissioner's decision.

## BACKGROUND

Plaintiff was born on March 10, 1971.  Tr. 21, 235.

---

[2] Citations to the official Transcript of Record (#12) filed by the Commissioner on August 31, 2020, are referred to as "Tr."

Plaintiff was 47 years old on her application date.  Tr. 21.
Plaintiff has at least a high-school education.   Tr. 21.
Plaintiff has past relevant work experience as a stock clerk,
deli-cutter/slicer, and child monitor.  Tr. 21.

Plaintiff alleges disability due to Post-Traumatic Stress
Disorder (PTSD), anxiety, major depressive disorder, and
migraines.  Tr. 145.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 16-21.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110
(9th Cir. 2012).  To meet this burden a claimant must
demonstrate her inability "to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."  42
U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when
there is ambiguous evidence or when the record is inadequate to

allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the

Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity (SGA). 20 C.F.R. § 416.920(a)(4)(i). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The

criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also*

*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since August 2, 2018, Plaintiff's application date.  Tr. 15.

At Step Two the ALJ found Plaintiff has the severe impairments of major depressive disorder, a general anxiety disorder, and PTSD.  Tr. 15.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 16.  The ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the

following nonexertional limitations:  can understand, remember, and carry out only simple, routine, and repetitive tasks; can have only occasional contact with coworkers and supervisors; and cannot have contact with the general public.  Tr. 18.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work.  Tr. 21.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as industrial cleaner, hand-packager, and laundry laborer.  Tr. 22.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 22.


## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony and (2) failed to provide legally sufficient reasons for discounting the medical opinions of Kimel Limon, Psy.D, an examining psychologist, and Laura Flynn, L.P.C., Plaintiff's treating therapist.

**I.   The ALJ erred when she discounted Plaintiff's testimony.**

Plaintiff contends the ALJ erred when she failed to provide clear and convincing reasons for discounting Plaintiff's testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### B. Analysis

On February 10, 2019, Plaintiff completed an Adult Function Report. Tr. 270-77. Plaintiff noted her anxiety had worsened, she becomes "nervous and shaky" when dealing with people, and she has difficulty breathing. Tr. 270. She stays home "where [she is] safe," needs reminders to take her medication, is afraid to go outside and to be around people she doesn't know, and avoids neighbors and "pretty much everyone." Tr. 270, 273. She prepares simple meals, washes dishes, and does laundry. She goes grocery shopping once a month and attends weekly doctor appointments, but she prefers not to drive. Tr. 273. Her impairments impact her memory,

concentration, and understanding and her ability to complete
tasks, to follow instructions, and to get along with others.
Tr. 275.  She is unable to handle stress or changes in routine.
Tr. 276.

At the hearing on September 27, 2019, Plaintiff
testified she stopped working because of back pain, but she was
unable to return to work due to her difficulty being around
other people.  Tr. 38.  She stated she helps her husband with
the grocery shopping because he is no longer able to do it on
his own, but she has a hard time even shopping with her husband.
Tr. 38.  Her mental-health medications are "helpful because [she
doesn't] cry all the time."  Tr. 38.  She spends her day
cleaning the house, listening to music, or watching television.
Tr. 45.  She is depressed most days.  Tr. 52.

The ALJ discounted Plaintiff's testimony on the ground
that Plaintiff's allegations "are not consistent with the
medical record."  Tr. 20.  The ALJ concluded the medical records
do not support the "severity" of Plaintiff's symptoms,
Plaintiff's treatment has been "very conservative," and
Plaintiff's testimony is not supported by her activities of
daily living.  Tr. 20.  In addition, the ALJ pointed to
Plaintiff's testimony that she stopped working due to her

back pain rather than her mental-health impairments.  Tr. 20.

        Although the ALJ found Plaintiff's medically
determinable impairments could reasonably be expected to cause
her alleged symptoms, the ALJ concluded the medical records do
not support the "severity" of Plaintiff's alleged symptoms.
Tr. 20.  Plaintiff, however, is not required to show her
impairment could reasonably cause the severity of her alleged
symptoms.  *See Smolen v. Chater*, 80 F.3d at 1282.  As noted,
Plaintiff must only show her impairment could reasonably cause
"some degree" of the symptom, and the ALJ may not reject
Plaintiff's testimony regarding the severity of her symptoms
merely because it is unsupported by objective medical evidence.
*Id.   See also Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir.
2010)(same).  Here the ALJ failed to identify specific evidence
to support her conclusion that the medical record does not
establish the alleged severity of Plaintiff's symptoms.

        In addition, the ALJ concluded Plaintiff's treatment
was "very conservative" because it consisted of "largely over-
the-counter medication and prescription medication" and
Plaintiff "has not generally received the type of medical
treatment one would expect for a totally disabled person."
Tr. 20.  The ALJ, however, noted Plaintiff's mental-health

13 - OPINION AND ORDER

symptoms were treated with therapy, which the record shows began

as early as August 2016 (Tr. 348), and multiple medications

including Prazosin, Aripiprazole, Trazadone, Cymbalta,

Lorazepam, Fluoxetine, and Ativan.  Tr. 20.  In November 2017

Plaintiff also began regularly seeing L.P.C. Flynn, her treating

therapist, for depressive disorder, anxiety disorder, and PTSD.

Tr. 472.  The ALJ did not provide any explanation for deeming

this treatment to be "conservative".  *See Revels v. Berryhill*,

874 F.3d 648, 667 (9th Cir. 2017)(ALJ erred by failing to

explain why treatment for fibromyalgia was "conservative").

          The ALJ further discounted Plaintiff's testimony based

on her activities of daily living.  Tr. 20.  The ALJ noted the

medical records reflected Plaintiff was able "to attend a large

conference and enjoy herself," go out with friends and her

husband, and visit family members.  Tr. 20.  Plaintiff also

performs adequate self-care, prepares simple meals, does

household chores, and goes to the store.  Tr. 20.  The ALJ

concluded these activities "indicate a higher level of function"

than alleged by Plaintiff.  Tr. 20.

          Nevertheless, the Ninth Circuit has found "the mere

fact that a plaintiff has carried on certain daily activities

. . . does not in any way detract from her credibility as to her

14 - OPINION AND ORDER

overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050
(9th Cir. 2001).  Moreover, here Plaintiff's activities do not
contradict her testimony that she generally isolates herself at
home; goes out only when accompanied by another person; and, in
addition, does not engage in pursuits that involve "the
performance of physical functions that are transferable to a
work setting." *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.
2007)(citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.
1989))(Daily activities may be grounds for an adverse
credibility finding "if a claimant is able to spend a
substantial part of his day engaged in pursuits involving the
performance of physical functions that are transferable to a
work setting.").

         On this record the Court concludes the ALJ erred when
she discounted Plaintiff's subjective symptom testimony and
failed to provide legally sufficient reasons supported by
substantial evidence in the record for doing so.

**II.  The ALJ erred when she discounted the medical opinions of
     Dr. Limon and L.P.C. Flynn.**

     Plaintiff contends the ALJ erred when she discounted the
medical opinions of Dr. Limon, an examining psychologist, and
L.P.C. Flynn, Plaintiff's treating therapist.

**A.    Standards**

The Court notes the regulations regarding evaluation of medical evidence have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded for claims protectively filed after March 27, 2017. The new regulations provide the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017).  *See* 20 C.F.R. § 404.1520c(a).  Instead the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on "supportability" and "consistency" using the factors specified in the regulations. 20 C.F.R. § 404.1520c(c).  Those factors include "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors."  *Id.*  The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process.  *Id. See also Revisions to Rules*, 82 Fed. Reg. 5844.

In addition, the regulations change the way the Commissioner should articulate his consideration of medical

16 - OPINION AND ORDER

opinions.

> First, we will articulate our consideration of medical opinions from all medical sources regardless of whether the medical source is an AMS [Acceptable Medical Source]. Second, we will always discuss the factors of supportability and consistency because those are the most important factors. Generally, we are not required to articulate how we considered the other factors set forth in our rules. However, when we find that two or more medical opinions . . . about the same issue are equally well-supported and consistent with the record but are not exactly the same, we will articulate how we considered the other most persuasive factors. Third, we added guidance about when articulating our consideration of the other factors is required or discretionary. Fourth, we will discuss how persuasive we find a medical opinion instead of giving a specific weight to it. Finally, we will discuss how we consider all of a medical source's medical opinions together instead of individually.

*Revisions to Rules*, 82 Fed. Reg. 5844.

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he/she] considered the medical opinions" and "how persuasive [he/she] find[s] all of the medical opinions." 20 C.F.R. § 404.1520c(a) and (b)(1). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. § 404.1520c(b)(2). Accordingly, to determine the persuasiveness

17 - OPINION AND ORDER

of a medical opinion the court must evaluate whether the ALJ
properly considered the factors as set forth in the regulations.

   **B.    Analysis**

      **1.   Dr. Limon**

            Before the hearing Plaintiff requested the ALJ to
order a consultative psychological evaluation of Plaintiff to
determine the functional limitations of her mental impairments.
Tr. 342.  The ALJ ordered an evaluation, and Dr. Limon performed
a psychodiagnostic examination of Plaintiff on August 17, 2019.
Tr. 1161-70.  Dr. Limon noted Plaintiff appeared fearful and sat
erect during the interview.  Tr. 1164.  Her speech was
spontaneous and her thought process was tangential.  Tr. 1164.
Plaintiff appeared dysphoric, and her speech and demeanor showed
a constricted range of emotion.  Tr. 1164-65.  Her "fund of
knowledge" was mildly impaired, and her social judgment was
moderately impaired.  Tr. 1165.  Plaintiff had good insight into
her mental status and her need for treatment.  Tr. 1165.
Dr. Limon found Plaintiff credible in her statements, and she
did not have any discrepancy or appearance of malingering
regarding her mental-health symptoms.  Tr. 166.  Dr. Limon
diagnosed Plaintiff with PTSD.  Tr. 1166.  Dr. Limon opined
Plaintiff is also moderately to markedly impaired in her ability

to understand, to carry out, and to remember both complex and one-two step instructions; extremely impaired in her ability to sustain concentration and attention and to persist in work-related activity at a reasonable pace; extremely impaired in her ability to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the general public; moderately impaired in her adaptive functioning; and required assistance and reminders.  Tr. 1166.

   As part of her report Dr. Limon completed a Medical Statement of Ability to Do Work-Related Activities (Mental).  Tr. 1168-70.  Dr. Limon concluded Plaintiff had moderate limitations in her ability to understand and to remember simple instructions; marked limitations in her ability to make judgments on simple work-related decisions; marked limitations in her ability to understand, to remember, and to carry out complex instructions; marked limitations in her ability to make judgments on complex work-related decisions; and extreme limitations in her ability to interact appropriately with the public, supervisors, and coworkers and to respond appropriately to usual work situations and changes in a routine work setting.  Tr. 1168.

   As set out earlier, the ALJ is required to apply

five factors to determine the persuasiveness of a medical

opinion:  (1) supportability; (2) consistency with other

evidence in the record; (3) the medical sources' relationship

with the claimant including length, frequency, and extent of

treatment; (4) the medical sources' area of specialization;

and (5) other factors including the medical sources' familiarity

with other evidence and the requirements of the disability

program.  20 C.F.R. § 404.1520.  Supportability and consistency

are considered the most important factors.  20 C.F.R.

§ 404.1520c(c).  Regulations also recognize a provider who bases

her opinion on an independent examination of a claimant rather

than only a review of available records "may have a better

understanding of [the claimant's] impairment(s)."  20 C.F.R.

§ 416.920c(c)(3)(v).

        As noted, the ALJ referred Plaintiff to Dr. Limon

for an independent diagnostic evaluation.  Dr. Limon reviewed

Plaintiff's medical records, conducted a clinical interview of

Plaintiff, and performed a mental-status evaluation.  The ALJ,

however, was "not persuaded" by Dr. Limon's opinion on the

grounds that her opinion was based on a one-time examination of

Plaintiff and the limitations assessed by Dr. Limon were

inconsistent with her own examination findings and Plaintiff's

20 - OPINION AND ORDER

improvement reflected in the overall record.  Tr. 20-21.

          As to the ALJ's finding that Dr. Limon's opinion

was inconsistent with her own findings, the ALJ stated:

> [T]he overall evidence of record . . .
> generally showed alertness, orientation, a
> pleasant and cooperative, but depressed
> demeanor, intact grooming and hygiene[,]
> poor impulse control and isolative behaviors
> variable mood and affect, variable memory,
> variable attention and concentration, intact
> cognition, average intellectual functioning,
> intact abstract reasoning, intact
> comprehension, and a generally logical,
> thought process, but variable though
> process, with minimal insight, and variable
> judgment."

Tr. 20-21.  The ALJ, however, did not provide any explanation to

show how this evidence contradicted Dr. Limon's opinion nor

identify any evidence to support her finding that Dr. Limon's

opinion was inconsistent with her own findings.

          The ALJ also stated Dr. Limon's assessment was

inconsistent with Plaintiff's improvement with treatment as

indicated in the overall record.  Tr. 21.  As Plaintiff asserts

in her Opening Brief, the record reflects with treatment

Plaintiff's mental-health symptoms waxed and waned in severity.

See Pl.'s Br. (13) at 11-13.

          Finally, the ALJ found the opinions of the

nonexamining state-agency consultants in March and April 2019 to

be "generally" consistent with the medical record and more
persuasive than Dr. Limon's assessment.  Tr. 20.  The ALJ,
however, did not provide any explanation to support her finding.

Based on this record the Court concludes the ALJ
erred when she failed to provide legally sufficient reasons
supported by substantial evidence in the record for discounting
Dr. Limon's assessment of Plaintiff's limitations.

### 2.  L.P.C. Flynn

L.P.C. Flynn began treating Plaintiff in November
2017.  Tr. 472, 491.  On September 5, 2018, L.P.C. Flynn
provided a written evaluation of Plaintiff's limitations.
Tr. 471-76.  L.P.C. Flynn noted Plaintiff experiences symptoms
of anxiety, which manifest themselves as agoraphobia and panic
attacks, and symptoms of PTSD, which include nightmares and
flashbacks triggered by memories.  Tr. 473.  L.P.C. Flynn noted
Plaintiff's anxiety and negative self-views are "extremely
problematic" and opined Plaintiff would "run the risk of
dissociation and not being able to function in a work
environment with others."  Tr. 473.  She further opined
Plaintiff's anxiety would be problematic even in simple,
routine, low-stress work that did not require contact with the

public or close coordination with coworkers and supervisors.
Tr. 473.

L.P.C. Flynn opined Plaintiff is markedly
impaired in her ability to understand, to remember, and to carry
out simple instructions, and to make judgments on simple work-
related decisions.  She further opined Plaintiff is extremely
impaired in her ability to understand, to remember, and to carry
out complex instructions and to make judgments on complex work-
related decisions.  Tr. 475.  L.P.C. Flynn also found Plaintiff
is moderately impaired in her ability to interact appropriately
with the public, markedly impaired in her ability to interact
appropriately with supervisors and coworkers, and extremely
impaired in her ability to respond appropriately to usual work
situations and to changes in routine work settings.  Tr. 475.
L.P.C. Flynn's assessment was based on Plaintiff's anxiety and
PTSD symptoms, and she concluded these symptoms would prevent
Plaintiff from functioning effectively in any position.
Tr. 475.

The ALJ was "not persuaded" by L.P.C. Flynn's
assessment on the ground that the "marked and extreme
limitations" she assessed are inconsistent with the medical
record.  Tr. 21.  As noted, the ALJ is required to explain how

she "considered the supportability and consistency factors" when
determining the persuasiveness of a medical opinion.  20 C.F.R.
§ 404.1520c(b)(2).  Here the ALJ failed to provide any
explanation or analysis to support her conclusion.

Based on this record the Court concludes the ALJ
erred when she failed to provide legally sufficient reasons
supported by substantial evidence in the record for discounting
L.P.C. Flynn's assessment of Plaintiff's limitations.

In summary, the Court concludes the ALJ erred in her
evaluation of the medical opinions of Dr. Limon and L.P.C.
Flynn.

## REMAND

The decision whether to remand for further proceedings or
for payment of benefits generally turns on the likely utility of
further proceedings.  *Carmickle*, 533 F.3d at 1179.  The court
may "direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,

24 - OPINION AND ORDER

1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when

> (1) the ALJ has failed to provide legally sufficient
> reasons for rejecting such evidence, (2) there are no
> outstanding issues that must be resolved before a
> determination of disability can be made, and (3) it is
> clear from the record that the ALJ would be required
> to find the claimant disabled were such evidence
> credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits
if the case were remanded for further proceedings.  *Id.* at 1178
n.2.

As noted, the Court has concluded the ALJ erred when she
failed to provide legally sufficient reasons supported by
substantial evidence in the record for discounting Plaintiff's
testimony and for discounting the persuasiveness of the medical
opinions of Dr. Limon and L.P.C. Schwartz regarding Plaintiff's
limitations.  Thus, the Court concludes consideration of the
record as a whole establishes that the ALJ would be required to
find Plaintiff disabled and to award benefits to Plaintiff if
this evidence is credited.

Accordingly, the Court remands this matter for the
immediate calculation and payment of benefits.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 9th day of March, 2021.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge